1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                          NORTHERN DISTRICT OF CALIFORNIA

10

11   NATURAL RESOURCES DEFENSE                No. C 01-0421 JL
     COUNCIL, et al.,
12
                 Plaintiffs,
13                                            **ORDER DENYING MOTIONS
          v.                                  TO INTERVENE
14                                            (Docket #s 145, 162 )**
     CARLOS GUTIERREZ
15   Secretary of Commerce;
     NATIONAL MARINE FISHERIES
16   SERVICE; NATIONAL OCEANIC AND
     ATMOSPHERIC ADMINISTRATION,
17
                 Defendants.
18   _____/

19                              **Introduction**

20        The motion of West Coast Seafood Processors Association ("The Association") to

21   intervene (Docket # 145) came on for hearing along with the motion of Plaintiff Natural

22   Resources Defense Council ("NRDC") for leave to amend its complaint. The Court

23   considered the written pleadings, heard oral argument, granted leave to amend and took

24   the motion to intervene under submission. The motion of the Makah Indian Tribe ("The

25   Tribe") to intervene ( Docket # 162 ) was submitted on the papers without oral argument as

26   provided by Civil Local Rule 7-10(b) on request of counsel for the Tribe, who is located in

27   Seattle, Washington. Counsel for the Tribe appeared by telephone for the hearing on

28   Plaintiffs' motion to amend and for the Association's motion to intervene.

**United States District Court**
For the Northern District of California

1    Attorneys for Plaintiffs were Laura Pagano, Aaron Colangelo and Selena Kyle,

2  Natural Resources Defense Council ("NRDC"); Attorney for Federal Defendants National

3  Marine Fisheries Service "NMFS" et al. was Assistant U.S. Attorney  Lisa Russell, U.S.

4  Dept. Of Justice, Environment and Resource Division (by telephone from Washington,

5  D.C.);Attorney for West Coast Seafood Processors Association ("the Association") was

6  James P. Walsh, DAVIS WRIGHT TREMAINE; attorney for Makah Indian Tribe ("the

7  Tribe") was Marc D. Slonim, appearing  *pro hac vice*, ZIONTZ, CHESTNUT VARNELL

8  BERLEY & SLONIM, (by telephone from Seattle, Washington).

9                              **Background**

10    This Court has jurisdiction pursuant to 42 U.S.C. §4321, the National Environmental

11  Policy Act ( "NEPA" ). The present parties expressly consented to this Court's jurisdiction

12  as provided by 28 U.S.C. § 636(c) and Civil Local Rule 73. *Aldrich v. Bowen*, 130 F.3d

13  1364, 1365 (9th Cir. 1997); *Nasca v. Peoplesoft*, 160 F.3d 578, 579-580 (9th Cir. 1998).

14    Natural Resources Defense Council ("NRDC"), a national environmental

15  organization with headquarters in New York, challenges the regulations of groundfish

16  commercial fishing by the National Marine Fisheries Service, an agency of the Department

17  of Commerce.

18    An issue of concern in this lawsuit is the impact of bycatch on fish mortality. Because

19  different groundfish species such as bocaccio, Pacific ocean perch, canary rockfish,

20  cowcod, darkblotched rockfish, widow rockfish and yelloweye rockfish tend to school

21  together, fishermen harvesting one species may inadvertently catch another, which may be

22  discarded if the vessel has already caught its limit of that species. Discarded fish, called

23  "bycatch," usually die. NRDC contends the rebuilding plan in Amendment 12 and its

24  successors: Amendments 16-1, 16-2, 16-3 and most recently 16-4 inadequately address

25  the bycatch issue and bycatch mortality, permit excessive quotas for fish, and a too-lengthy

26  rebuilding period for overfished species of Pacific groundfish.

27

28

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  NRDC contends that the rebuilding plans in Amendments 12 and its successors,

2  including most recently Amendment 16-4, allow overfishing under the "mixed stock

3  exception" to the Magnuson-Stevens Act prohibition against overfishing.

**Issue of Consent to Magistrate Judge's Jurisdiction**

5  Case law on the issue of consent to a magistrate judge's jurisdiction over a motion to

6  intervene is sparse and conflicting.  The U.S. Court of Appeals for the Ninth Circuit has not

7  expressly ruled on this question. After a thorough and comprehensive analysis of the

8  question the Seventh Circuit has held:

9  "An applicant for intervention is not yet a 'party.' Accordingly, if the existing parties

10  have consented, a magistrate judge may hear and decide an application to intervene. But if

11  intervention is granted, the new party's consent is required if the magistrate judge is to

12  conduct any further proceedings 'by consent.' "*People Who Care v. Rockford Bd. of Ed.*

13  171 F3d 1083, 1089 (7th Cir. 1999).  "[T]he power to rule on motions to intervene is a

14  necessary and proper incident of the magistrate judge's power to decide the underlying

15  case"). *Id.* Accordingly, this Court proceeds to decide the motions to intervene without

16  consent of the proposed intervenors.  Although the Tribe has offered to consent, should it

17  be permitted to intervene, the Association has reserved the matter.

**Procedural Background**

19  This is the last remaining of three related cases which have been adjudicated by this

20  Court. All concern management of the Pacific groundfish fishery.

21  In *Natural Resources Defense Council, Inc. v. Evans*, 168 F. Supp.2d 1149, 1160-61

22  (N.D. Cal. 2001)[1] and *Pacific Marine Conservation Council, Inc. v. Evans*, 200 F. Supp.2d

23  1194, 1207 (N.D. Cal. 2002), the Court granted in part Plaintiffs' summary judgment

24  motions, and ordered, *inter alia*, that the National Marine Fisheries Service ("NMFS")

25  reconsider (1) its rebuilding plans for overfished species; and (2) Amendment 13 to the

26

27  ───────────────

28  [1] Aff'd in part, vacated in part at 316 F.3d 904 (9th Cir. 2003) and motion denied at 243 F.Supp.2d 1046 (N.D.Cal. 2003)

United States District Court

For the Northern District of California

1    Pacific Coast Groundfish Fishery Management Plan ("FMP"), which addressed the bycatch

2    issue.

3         In *Natural Resources Defense Council v. Evans*, 243 F. Supp.2d 1046, 1059 (N.D.

4    Cal. 2003), the Court ordered the Federal Defendants to submit reports every six months

5    of their progress toward implementing the Court's previous orders in these cases, and to

6    continue reporting until all provisions of the Court's previous orders have been satisfied.

7    Federal Defendants' most recent Progress Report was submitted on February 27, 2007.

8    See Federal Defendants' Ninth Progress Report, Doc. No. 184 (Case No. C 01-0421-JL),

9    Doc. No. 103 (Case No. C 01-2506-JL).

10        The Court issued a second order establishing specific deadlines for NMFS to

11   approve rebuilding plans for overfished species. *Natural Resources Defense Council v.*

12   *Evans*, 290 F. Supp.2d 1051, 1057 (N.D. Calif. 2003). This order required NMFS to

13   approve rebuilding plans for darkblotched and canary rockfish, lingcod, and Pacific ocean

14   perch by January 31, 2004; to approve rebuilding plans for bocaccio rockfish, cowcod,

15   yelloweye and widow rockfish by September 15, 2004 and to approve a rebuilding plan for

16   Pacific whiting by November 30, 2004.

17        On June 30, 2004, in Case No. C 01-0421-JL, the Court issued an Order Granting

18   Defendants' Motion for Relief from Judgment Pursuant to Federal Rule of Civil Procedure

19   60(b). This Order eliminated the requirement to approve a rebuilding plan for Pacific

20   whiting, because a new stock assessment showed that the stock was rebuilt. See 69 Fed.

21   Reg. 23667, 23668-69 (April 30, 2004).

22        On August 1, 2005, this Court issued a stay in Case No. C 01-0421-JL pending

23   resolution of the appeal of the district court decision in *Natural Resources Defense Council*

24   *v. National Marine Fisheries Service ("NRDC v. NMFS")*, 280 F. Supp.2d. 1007 (N.D. Cal.

25   2003), assigned to another judge of this Court, the Hon. Charles R. Breyer. On August 24,

26   2005, the Ninth Circuit at 421 F.3d 872 (9th Cir. 2005) (Fisher, J.), held that the 2002

27   fishing quota for darkblotched rockfish, an overfished species, violated the requirement of

28   the Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson-Stevens

1  Act") that the rebuilding time period must be "as short as possible, taking into account the

2  status and biology of any overfished stocks of fish, the needs of fishing communities,

3  recommendations by international organizations in which the United States participates,

4  and the interaction of the overfished stock of fish within the marine ecosystem." *Id.* at 875.

5  16 U.S.C. § 1854(e)(4)(A)(i). The Ninth Circuit remanded the case to the district court for

6  proceedings consistent with its opinion.

7      In response to a motion for order on remedy filed by the plaintiffs, Judge Breyer

8  issued an order dated December 8, 2005, remanding the remedy determination to NMFS

9  to allow the agency to: (1) establish a global solution for the 2007-2008 darkblotched

10  rockfish quota by December 31, 2006; and (2) establish an interim rule, pursuant to 16

11  U.S.C. § 1855(c), regarding the 2006 darkblotched rockfish quota. NMFS published the

12  interim rule on February 17, 2006.

13      On December 29, 2006, NMFS published a final rule implementing Amendment 16-4

14  to the FMP and establishing revised rebuilding plans for the seven remaining species of

15  overfished Pacific groundfish. 71 Fed. Reg. 78638 (Dec. 29, 2006).

16      NRDC moved for leave to file a Fourth Amended Complaint in Case No. 01-0421 to

17  challenge Amendment 16-4. The Court granted NRDC's motion for leave to amend on

18  January 24, 2007. See Civil Minutes (Jan. 24, 2007). NMFS filed an answer to the Fourth

19  Amended Complaint and produced an administrative record. The parties at that time

20  anticipated proposing a schedule for cross-motions for summary judgment after NMFS

21  filed its answer and certified the administrative record. The parties did not believe a trial

22  was necessary and expected that this case could be resolved on cross-motions for

23  summary judgment.

24      The West Coast Seafood Processors' Association and the Makah Indian Tribe had

25  in the meantime filed their motions to intervene.  The Association gives no reason for its

26  delay in filing its motion to intervene and contends its motion was timely because it was

27  filed prior to NRDC's filing its motion for leave to amend. The Makah Tribe contends that its

28  motion is timely because it filed immediately upon this case entering "a new phase." The

United States District Court
For the Northern District of California

1  "new phase" was the NRDC's filing a Fourth Amended Complaint which merely adds the

2  new-numbered Amendment 16-4 to the list of previous Amendments which it contends do

3  not comply with the terms of the Magnuson-Stevens Act and Congress' intent with respect

4  to management of the Pacific groundfish fishery. The Tribe does not offer any reason for

5  not moving to intervene earlier during the past five-plus years these three cases were

6  pending.   This case in particular which has been about the same species of fish and the

7  same issues of greatest concern to the Tribe.

8                                   **Administrative Record**

9          This Court on January 17, 2003 ordered the Federal Defendants to file a progress

10  report every six months on the steps being taken to comply with court orders.

11         The Federal Defendants' Scheduling Order and First Progress Report was filed on

12  February 26, 2003. The Second was filed on August 27, 2003, the Third on February 27,

13  2004, the Fourth on August 27, 2004, The Fifth was filed on February 28, 2005, and the

14  Sixth on August 26, 2005  - - three weeks after the Court stayed this action pending the

15  Ninth Circuit decision on the appeal of the *NRDC v NMFS* case decided by Judge Breyer.[2]

16         The following occurred immediately before, during and after the stay of this case:

17  Sixth Progress Report

18         1. Case No. C 01-0421-JL: Rebuilding Plans – Amendment 12 / Amendments 16-1,

19  16-2, 16-3, and 16-4.

20         2. On March 8-11, 2005, the Council held its March 2005 meeting and discussed,

21  among other topics, draft Amendment 18 and the work plan to complete it. Agenda item

22  F.5 is a discussion draft FMP Amendment 18. 70 Fed Reg. 8569 (February 22, 2005)

23  (attached as Exhibit 1).[3]

24

25         [2] "NMFS" refers to the National Marine Fisheries Service, also called NOAA Fisheries.
26  "Pacific Council" refers to the Pacific Fishery Management Council established by the
    Magnuson-Stevens Fishery Conservation and Management Act (Magnuson-Stevens Act) at
27  16 U.S.C. § 1852(a)(1)(F).

28         [3] Exhibits were attached to the Progress Reports but are not attached to this Order.

3. On May 2-3, 2005, the Council's Ad Hoc Allocation Committee held a work meeting to discuss, among other topics, issues pursuant to implementing the bycatch measures in Amendment 18 to the FMP. The Committee discussed the types of provisions that may be necessary to prevent further overfishing, to reduce bycatch of overfished species in the various groundfish fisheries, and to reduce bycatch in non-groundfish fisheries. 70 Fed. Reg. 17660 (April 7, 2005) (attached as Exhibit 2).

4. On August 16, 2005, staff at the Northwest Fisheries Science Center, NMFS, reported on progress on their Bycatch Action Plan for the period from February to August 2005, and recommended an action plan for the period August 2005 to February 2006 (memorandum attached as Exhibit 3).

5. On August 29, 2005, the Council's Groundfish Management Team was scheduled to hold a working meeting to discuss, among other topics, implementation strategies and draft amendatory language for FMP Amendment 18. 70 Fed. Reg. 47809 (August 15, 2005) (attached as Exhibit 4).

6. On September 18-23, 2005, the Council was scheduled to meet and discuss, among other topics, draft Amendment 18. Agenda item F.3 was a review of draft Amendment 18, including reports of the advisory bodies and public comment. The Council was scheduled to adopt FMP text and regulatory recommendations for public review. 70 Fed. Reg. 49260 (August 23, 2005) (attached as Exhibit 5.)

(Federal Defendants' Sixth Progress Report)

Seventh Progress Report

1. On August 24, 2005, the Ninth Circuit decided *Natural Resources Defense Council v. National Marine Fisheries Service* (NRDC v. NMFS), 421 F.3d 872 (9th Cir. 2005). That case was an appeal of the district court decision in *NRDC v. NMFS*, 280 F. Supp. 2d. 1007 (N.D. Cal. 2003). The Ninth Circuit held that the 2002 fishing quota for darkblotched rockfish, an overfished species, violated the requirement of the Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson-Stevens Act") that the rebuilding time period must be "as short as possible, taking into account the status and biology of any overfished stocks of fish, the needs of fishing communities,

United States District Court

For the Northern District of California

1   recommendations by international organizations in which the United States participates,

2   and the interaction of the overfished stock of fish within the marine ecosystem." 16 U.S.C.

3   § 1854(e)(4)(A)(i). The Ninth Circuit remanded the case to the district court for proceedings

4   consistent with its opinion.

5   2. On October 14, 2005, Plaintiffs filed a Motion for Order on Remedy in Case No.

6   C 02-1650, asking the Court to lower the 2006 quota for darkblotched rockfish from 269

7   metric tons to 100 metric tons, effective January 1, 2006. Federal Defendants opposed

8   Plaintiffs' motion, and requested that the Court remand to NMFS for further consideration

9   of the 2006 darkblotched rockfish quota. Federal Defendants informed the Court that the

10  Pacific Fishery Management Council ("Council"), at its November 2005 meeting, voted to

11  recommend that NMFS implement an emergency rule to lower the darkblotched rockfish

12  quota for 2006 to 200 metric tons. Federal Defendants further informed the Court that the

13  Council decided to develop Fishery Management Plan ("FMP") Amendment 16-4 to review

14  and revise, as necessary, all groundfish rebuilding plans to make them consistent with the

15  Ninth Circuit's ruling. The Council adopted a revised schedule for the development of

16  biennial specifications and management measures at its November 2005 meeting

17  (attached hereto as Exhibit 1).

18  3. By Order dated December 8, 2005, Judge Breyer remanded the remedy

19  determination to NMFS to allow the agency to: (1) establish a global solution for the 2007-

20  2008 darkblotched rockfish quota by December 31, 2006; and (2) establish an interim rule,

21  pursuant to 16 U.S.C. § 1855(c), regarding the 2006 darkblotched rockfish quota. NMFS

22  was directed to file with the Federal Register a proposed interim rule by December 15,

23  2005, and a final interim rule by February 15, 2006.

24  4. On February 17, 2006, NMFS published in the Federal Register an interim rule

25  which, inter alia, sets a darkblotched rockfish quota of 200 metric tons for 2006. 71 Fed.

26  Reg. 8489 (Feb. 17, 2006) (excerpt attached hereto as Exhibit 2). NMFS stated that this

27  reduced quota is an interim measure that will remain in place while Amendment 16-4 is

28  being developed and implemented. *Id.* at 8489.

**United States District Court**
For the Northern District of California

Amendment 18 to the Pacific Coast Groundfish Fishery Management Plan

5. On September 18-23, 2005, the Council held its September 2005 meeting at which it discussed draft Amendment 18, implementing the preferred alternative from the Final Programmatic Environmental Impact Statement ("EIS") for Pacific Coast Groundfish Bycatch Management. The Council adopted, for public review, language for a draft Amendment 18. See September 2005 Council Meeting List of Decisions, available at http://www.pcouncil.org/decisions/0905decisions.html#groundfish (attached hereto as Exhibit 3).

6. At its November 2005 meeting, the Council took final action to adopt the text of Amendment 18 for Secretarial review. See November 2005 Council Meeting List of Decisions, available at http://www.pcouncil.org/decisions/1105decisions.html (attached hereto as Exhibit 4). Upon transmittal of Amendment 18 by the Council to the Secretary, the Secretary was directed to commence a review of the Amendment in accordance with the Magnuson-Stevens Act, 16 U.S.C. 1854(a).

7. On February 24, 2006, staff at the Northwest Fisheries Science Center, NMFS, reported on progress on their Bycatch Action Plan for the period from August 2005 to February 2006, and recommended an action plan for February to August 2006 (memorandum attached hereto as Exhibit 5). (Federal Defendants' Seventh Progress Report)

Eighth Progress Report

1. On June 30, 2006, the Court held a case management conference in Case No. C 02-1650. The parties stated that they did not plan to take any further action in the case until NMFS issues its final rule pursuant to the Court's December 8, 2005 Order. The Court granted the parties' request to keep the December 8, 2005 Order in effect. In that Order, Judge Breyer remanded the remedy determination to NMFS to allow the agency to: (1) establish a global solution for the 2007-2008 darkblotched rockfish quota by December 31, 2006; and (2) establish an interim rule, pursuant to 16 U.S.C. § 1855(c), regarding the 2006 darkblotched rockfish quota. NMFS published an interim rule in the Federal Register

**United States District Court**

For the Northern District of California

1  on February 17, 2006 setting a darkblotched rockfish quota of 200 metric tons for 2006. 71

2  Fed. Reg. 8489 (Feb. 17, 2006).

3      2. At its April meeting, held on April 2-7, 2006, the Pacific Fishery Management

4  Council ("Council") adopted for analysis a preferred range of optimum yields (OY's) for

5  seven overfished species (darkblotched rockfish, bocaccio, canary rockfish, cowcod,

6  Pacific ocean perch, widow rockfish, and yelloweye rockfish). See April 2006 Council

7  Meeting List of Decisions, available at

8  http://www.pcouncil.org/decisions/0406decisions.html#groundfish

9  (attached hereto as Exhibit 1). The Council also adopted a range of 2007-08 management

10  measures for analysis. *See id.*

11      3. At its June meeting, held on June 11-16, 2006, the Council adopted OYs for the

12  overfished species, and adopted management measures for 2007-08. See June 2006

13  Council Meeting List of Decisions, available at

14  http://www.pcouncil.org/decisions/0606decisions.html#groundfish (attached hereto as

15  Exhibit 2).

16      4. On July 28, 2006, NMFS published a notice of availability for the draft

17  environmental impact statement ("EIS") for the Amendment 16-4 rebuilding plans. See 71

18  Fed. Reg. 42,846 (July 28, 2006) (attached hereto as Exhibit 3). The public comment

19  period ends September 11, 2006. See id.

20  <u>Amendment 18 to the Pacific Coast Groundfish Fishery Management Plan</u>

21      5. The Council submitted Amendment 18 to NMFS for Secretarial review on June 5,

22  2006. See Amendment 18 to the Pacific Coast Groundfish Fishery Management Plan,

23  available at http://www.pcouncil.org/groundfish/gffmp/gfa18.html.

24      6. On June 9, 2006, NMFS published a notice announcing Amendment 18 and

25  inviting public comments on the amendment through August 8, 2006. See 71 Fed. Reg.

26  33,432 (June 9, 2006) (attached hereto as Exhibit 4).

27      7. On June 27, 2006, NMFS published a proposed rule to implement Amendment

28  18. See 71 Fed. Reg. 36,506, (June 27, 2006) (attached hereto as Exhibit 5). Comments

on the proposed rule were due by August 8, 2006. See id.

**United States District Court**
For the Northern District of California

1    8. On August 24, 2006, staff at the Northwest Fisheries Science Center, NMFS,

2    reported on progress on their Bycatch Action Plan for the period from February 2006 to

3    August 2006, and recommended an action plan for August 2006 to February 2007

4    (memorandum attached hereto as Exhibit 6). (Federal Defendants' Eighth Progress

5    Report)

6    Ninth Progress Report

7    1. On September 1, 2006, NMFS published a Notice of Availability of Amendment

8    16-4, inviting comments through October 31, 2006. See 71 Fed.Reg. 52,051 (September

9    1, 2006). Amendment 16-4 contains rebuilding plans for seven overfished species

10   (darkblotched rockfish, bocaccio, canary rockfish, cowcod, Pacific ocean perch, widow

11   rockfish, and yelloweye rockfish).

12   2. On September 29, 2006, NMFS published a proposed rule to implement

13   Amendment 16-4 and the 2007-2008 groundfish harvest specifications and management

14   measures, inviting comments on the rule through October 31, 2006. See 71 Fed. Reg.

15   57,764 (September 29,2006).

16   3. After considering all comments submitted on the Amendment, the Environmental

17   Impact Statement ("EIS"), and the proposed rule, NMFS partially approved the Amendment

18   on November 30, 2006. *See id.*

19   4. On December 29, 2006, NMFS published the final rule to implement Amendment

20   16-4, including the rebuilding provisions and rebuilding plans for the seven overfished

21   species, and the 2007-2008 groundfish harvest specifications and management measures.

22   See 71 Fed. Reg. 78,638 (December 29, 2006).

23   5. On January 5, 2007, plaintiff NRDC [in the C-01-0421 case] requested leave to

24   file a fourth amended complaint that included a challenge to Amendment 16-4. On January

25   24, 2007, the Court granted the motion, and ordered Federal Defendants to answer the

26   amended complaint within 45 days.

27   6. After consideration of the public comments received on the amendment, NMFS

28   approved Amendment 18 on September 6, 2006. See 71 Fed. Reg. 66122 (November 13,

2006).

1    7. On November 13, 2006, NMFS published the final rule to implement Amendment

2    18. See id. The bycatch mitigation Final EIS, which expands on Amendment 18, is

3    available on the NMFS Northwest Region Web site at:

4    http://www.nwr.noaa.gov/Groundfish-Halibut/

5    Groundfish-Fishery-Management/NEPA-Documents/Bycatch-EIS.cfm.

6    8. At its November 2006 meeting, the Council adopted its Groundfish Bycatch Work

7    Plan, with recommendations for how the plan will be updated periodically as new

8    information becomes available. See Decisions at the November 2006

9    Meeting, 2, available at http://www.pcouncil.org/decisions/currentdec.html#groundfish

10   (attached hereto as Exhibit 1). The revised Groundfish Bycatch Work Plan is available at

11   http://www.pcouncil.org/bb/2007/bb0307.html, informational report 2 (attached hereto as

12   Exhibit 2).

13   9. On February 27, 2007, staff at the Northwest Fisheries Science Center, NMFS,

14   reported on progress on their Bycatch Action Plan for the period from August 2006 to

15   February 2007, and summarized their ongoing bycatch monitoring program (memorandum

16   attached hereto as Exhibit 3). (Federal Defendants' Ninth Progress Report, filed February

17   27, 2007 )

18                          **Motion to Intervene - Argument**

19   The NRDC objects to the Association's motion, on the basis that at the time it filed

20   its motion to intervene, the Association did not provide a pleading stating the basis of its

21   claims or defenses. NRDC asserts that the Association accordingly makes it impossible for

22   either the existing parties or the Court to determine whether the Association satisfies the

23   requirements for either intervention of right under FRCP 24(a)(2) or permissive intervention

24   under FRCP 24(b)(2). *See, e.g., Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 474-475

25   (9th Cir. 1992) (holding that Rule 24 (c) pleading is essential where the petition to intervene

26   does not "fully state the legal and factual grounds" or otherwise "describe the basis for

27   intervention with sufficient specificity.")

28   The Association by the time of the hearing had filed its proposed Answer and claims

     that even without the Answer, NRDC should not have been surprised or prejudiced by its

*Left margin (vertical text):* **United States District Court** / For the Northern District of California

United States District Court

For the Northern District of California

1   motion, since NRDC has had notice since at least October 24, 2006, when the motion to

2   intervene was first filed, and even longer, since The Association has been an *amicus* in

3   this case for years, as well as an Intervenor in the groundfish cases before Judge Breyer.

4        The gist of the Association's Answer is that the NMFS regulations in question are not

5   unlawful and that, although the groundfish species at issue (bocaccio, Pacific ocean perch,

6   canary rockfish, cowcod, darkblotched rockfish, widow rockfish and yelloweye rockfish)

7   may meet the "technical definition of 'overfished' under the Magnuson-Stevens Act," none

8   of the species have ever been listed as threatened or endangered under the Endangered

9   Species Act, 16 U.S.C. section 1531-1544.

10       The Association's grounds for intervention as of right are that it will not cause any

11  delay or prejudice to the other parties and that its interests are not adequately represented

12  either by NRDC or by NMFS. Specifically it asserts that:

13       1.   The application was timely;

14       2.   It has a significant protectable interest relating to the property or transaction

15            that is the subject of the action;

16       3.   The disposition of the action may, as a practical matter, impair or impede the

17            applicant's ability to protect that interest;

18       4.   The applicant's interest may not be adequately represented by existing

19            parties to the lawsuit. *Southwest Center for Biological Diversity v. Berg*, 268

20            F.3d 810, 817 (9th Cir. 2001)

21       The Association argues that Rule 24 is liberally construed in favor of the potential

22  intervenor and an application for intervention is reviewed in light of using practical not

23  technical considerations.

24       The Association contends its application was timely, having been filed prior to

25  NRDC's motion for leave to file a Fourth amended complaint.

26       It also claims to have a protectable interest in the subject of the action, since NRDC

27  is likely to continue to seek new regulations restricting fishing of Pacific groundfish.

28  Furthermore, the Associations members are bound by the regulations at issue in this

1  lawsuit. The Association's members would also be bound by this Court's decisions and any

2  settlement of this lawsuit.

3      The Association contends the interests of its members are not adequately

4  represented by either NRDC or NMFS.

5      The Association also claims entitlement to intervene permissively, since there are

6  common questions of law or fact - that the Association has an interest in maintaining the

7  current regulations in effect.

8      NRDC would only agree to a limited intervention, confined to the issues in its Fourth

9  Amended Complaint, and contingent on the proposed intervenors' consent to this Court's

10  jurisdiction:

11  " In addition, NRDC does not oppose intervention if the [Proposed Intervenor] and
    other prospective defendant-intervenors consent to this matter continuing to be
12  heard by a magistrate judge, pursuant to 28 U.S.C. § 636(c)(1). If the prospective
    intervenors do not consent, NRDC opposes intervention because it could unduly
13  delay resolution of this case if transfer to a district judge is required as a result."

14  **Analysis**

15  **Intervention: Of Right or Permissive?**

16  Intervention is a matter of right and shall be permitted when:

17  1.      A federal statute confers the unconditional right to intervene in the action; or

18  2.      The applicant claims an interest which may, as a practical matter, be

19          impaired or impeded by disposition of the pending action, and that interest is

20          not adequately represented by existing parties. FRCP 24(a)

21      This Court finds that both the Association and the Tribe have the right to intervene

22  in this case because they have interests in the regulation of the Pacific groundfish fishery.

23      The Association is a non-profit trade association whose members purchase fish

24  from harvesting vessels and convert it into consumable products throughout the United

25  States. (Declaration of Rodney H. Moore, Executive Director) The Association also

26  describes itself as existing "to serve the needs of the shore-based seafood processors in

27  California, Oregon and Washington, who must fight to survive in the face of today's

28  economic, environmental, and regulatory challenges." ("Who We Are and What We Do," at

www.wcspa.com)

1
2
3
4
5
6

"Having a unified group that presents a common front to fisheries managers in all three states, not to mention the federal government and the Pacific Fishery Management Council, is an effective way of protecting the interests of our members. " *Id.* Its members include seafood distributors, retail sellers of fishing supplies, seafood retailers and wholesalers, fishing industry associations, law firms, lenders, insurance services, public affairs consultants and seafood importers. *Id.*

7
8
9
10
11
12
13
14
15
16

Members appear before the Pacific Fishery Management Council and provide written testimony to the National Marine Fisheries Service on fishery management measures and specifications for Pacific groundfish. (Decl. Of Rodney H. Moore) The Association has been an amicus in the cases at bar before this Court since 2002 and has been a party in the cases pending before Judge Breyer with respect to the Pacific groundfish specifications for 2002, 2003, 2004-2005, and presented briefs and argument in *NRDC v NMFS*, 421 F.3d 872 (9th Cir. 2005). The Association contends that its interests in this litigation would not be fully represented by the National Marine Fisheries Service, because its views are very different about the appropriate measures needed to sustain Pacific groundfish. (*Id.*)

17

The Makah Indian Tribe also moves to intervene as of right.

18
19
20
21

The Makah Tribe is a federally recognized Indian tribe, occupying a small, isolated reservation on the northwest tip of the Olympic Peninsula in the State of Washington. *See United States v. Washington*, 384 F. Supp. 312, 363 (W.D. Wash. 1974) (*Washington I*), aff'd, 520 F.2d 676 (9th Cir. 1975), cert. denied, 423 U.S. 1086 (1976). The Tribe's historic reliance on marine resources was documented in the landmark Indian treaty fishing rights case in the Pacific Northwest:

22
23
24

Makah wealth, power and maintenance of Northwest Coast culture patterns were achieved by and dependent upon a thriving commercial maritime economy which was well established prior to 1855. . . . The Makah Indians, prior to treaty times, were primarily seafaring people who spent their lives either on the water or close to the shore.

25
26
27

Most of their subsistence came from the sea where they fished for salmon, halibut and other fish, and hunted for whale and seal. The excess of what they needed for their own consumption was traded to other tribes for many of the raw materials and some of the finished articles used in the daily and ceremonial life of the village. *Id.*

28

The Tribe was a party to the Treaty of Neah Bay, in which, in exchange for a large land cession by the Tribe, the United States guaranteed the Tribe's right to fish in its

1

2

3

4

5

usual and accustomed fishing grounds. Id. at 363-64; *Midwater Trawlers Cooperative v. Department of Commerce*, 282 F.3d 710, 714-15, 716-17 (9th Cir. 2002) (*Midwater Trawlers I*). The Tribe's treaty fishing grounds include Pacific Ocean waters off the northern coast of Washington State, including waters under the current fisheries management jurisdiction of the United States. *Washington I*, 384 F. Supp. at 364; *United States v. Washington*, 626 F. Supp. 1405, 1467-68 (W.D. Wash. 1985) (*Washington II*), aff'd, 730 F.2d 1314 (9th Cir. 1984); *Midwater Trawlers* I, 282 F.3d at 717-18.

6

7

8

9

10

11

12

13

14

The Tribe's contemporary subsistence, economy and culture depend upon the Tribe's treaty commercial and subsistence fisheries and upon the non-treaty recreational fisheries that operate out of Neah Bay, the principal village and port on the Makah Indian Reservation. Joner Decl. ¶ 2. The Makah Tribe has the largest tribal groundfish fleet on the West Coast, currently comprising 47 boats that are wholly owned and crewed by Makah tribal members. Id. ¶ 3. Thirty-two of these boats fish for salmon, sablefish and halibut using troll and longline gear; ten fish for other groundfish (including yellowtail rockfish and other healthy groundfish stocks) using midwater and bottom trawl gear; and five fish for Pacific whiting using midwater trawl gear. Id. Another 20 boats owned by tribal members participate in the salmon troll fishery exclusively. Id. In addition, tribal members own vessels operating in and otherwise obtain employment from Neah Bay's recreational fisheries. Id. According to censuses conducted by the Makah Tribe's Planning Department, approximately 50 percent of household income on the Makah Reservation is derived directly from these commercial and recreational fisheries. *Id.* The Magnuson-Stevens Act requires that fishery management plans and regulations.

15

(Makah Tribe Motion to Intervene at 6 *et seq.*)

16

17

18

19

Accordingly, in light of the interests of the Association and the Tribe in the Pacific groundfish fishery, this Court finds that both the Association and the Tribe have the right to intervene in this case, if they have met the procedural requirements of FRCP 24 and if their interests are not adequately represented by the existing parties.

20

### Criteria to Permit Intervention

21

22

23

24

25

26

27

The Court applies a four-part test under Rule 24(a): (1) the application for intervention must be timely; (2) the applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit. *Northwest Forest Resource Council ("NFRC") v. Glickman*, 82 F.3d 825, 836 (9th Cir.1996).

28

### Timeliness

United States District Court

For the Northern District of California

1   Timeliness is "the threshold requirement" for intervention as of right. *United States*
2   *v. Oregon*, 913 F.2d 576, 588 (9th Cir.1990). If we find "that the motion to intervene was
3   not timely, [we] need not reach any of the remaining elements of Rule 24." *United States v.*
4   *State of Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996).

5   In determining whether a motion for intervention is timely, a court considers three
6   factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the
7   prejudice to other parties; and (3) the reason for and length of the delay." *County of*
8   *Orange v. Air California*, 799 F.2d 535, 537 (9th Cir.1986). In considering these factors,
9   however, we must bear in mind that "any substantial lapse of time weighs heavily against
10  intervention." *Washington*, 86 F.3d at 1503. Because the Association and the Tribe filed
11  their motions five-plus years after the original actions challenging the NMFS regulations of
12  the groundfish fishery were commenced in 2001, they fight an uphill battle in their effort to
13  intervene.

14  Timeliness is addressed to the sound discretion of the trial court. *National Ass'n. For*
15  *the Advancement of Colored People v. New York*, 413 U.S. 345, 366 (1973); *Yniguez v.*
16  *State of Arizona*, 939 F.2d 727, 731 (9th Cir. 1991). The Court cannot base its decision
17  merely on the length of time the case has been pending, but considers all the
18  circumstances relating to timeliness in the case. *United States v. Alcan Aluminum*, *Inc.*, 25
19  F.3d 1174, 1181 (3d Cir. 1994); *United States v. Yonkers Board of Education*, 801 F.2d
20  593, 595 (2d Cir. 1986). The Court must construe the requirements of FRCP 24, including
21  timeliness, broadly in favor of the party seeking intervention. *Westlands Water Dist. v.*
22  *United States*, 700 F.2d 561, 563 (9th Cir. 1983). The Court must be lenient in applying the
23  timeliness requirement where intervention is sought as a matter "of right." *United States v.*
24  *Oregon*, 745 F.2d 550, 552 (9th Cir. 1984).

25  **Stage of the Proceedings**
26  The stage of the proceedings in this case is quite late – the two related cases, C-01-
27  0637 and C-01-2506, have been resolved after summary judgment and appeals and
28  decisions on the appeals and judgment has been entered in both cases.  In this, the

United States District Court
For the Northern District of California

1  remaining case, summary judgment has been entered and the case has been re-started,

2  having been stayed pending a ruling by the Court of Appeals in another case involving the

3  Pacific groundfish fishery. That ruling, at *Natural Resources Defense Council v. National*

4  *Marine Fisheries Service* (NRDC v. NMFS), 421 F.3d 872 (9th Cir. 2005) is persuasive or

5  potentially dispositive of the issues in this case.

6      All of the developments listed in the Administrative Record portion of this Order

7  have occurred in pages 6 to 12 above.  The fact that this Court has already substantially

8  engaged the issues in this case weighs heavily against allowing intervention.  See *League*

9  *of United Latin American Citizens Against Wilson*, 131 F.3d 1297, 1303 (9th Cir. 1997).

10                    **Prejudice to Existing Parties**

11

12     Some courts consider prejudice to existing parties to be the most important factor in

13  determining the timeliness of a motion to intervene. *Petrol Stops Northwest v. Continental*

14  *Oil Co.*, 647 F.2d 1005, 1010 (9th Cir. 1981).  Prejudice might conceivably be shown by

15  loss of evidence, settlements made in expectation that no further claims would be made, or

16  the necessity of reopening matters previously adjudicated. *Id.* The question is not whether

17  the intervention itself will cause the nature, duration or disposition of the lawsuit to change.

18  *Smith v. Marsh*, 194 F.3d 1045, 1051 (9th Cir. 1999).

19     In the case at bar, there have been no settlements, except for interim awards of

20  attorney fees, and no additional evidence would be required, since these cases are all

21  decided on the administrative record. The Association and the Tribe have agreed to be

22  bound by the Court's previous adjudications, but are not bound by these assurances as

23  discussed *infra*.

24     The delay in seeking intervention prejudices the existing parties in two ways. First,

25  the Court takes judicial notice that NRDC is a nonprofit organization fighting environmental

26  battles on many fronts, both nationally and internationally, having litigated at least ten

27  cases in this district alone within the past six years. The Court assumes that this requires

28  NRDC to allocate resources according to the posture of each individual case.  This case is

United States District Court

For the Northern District of California

winding down, in a posture where resolution by summary judgment or settlement is within haling distance.

Second, and somewhat related to the first reason for a finding of prejudice, this case had been at issue for well over five years when the Association and the Tribe finally got around to moving to intervene. The Court can only assume that, since they are not content with the status of *amicus*, they will be conducting discovery and filing motions. Some of those may be motions for the Court to reconsider its previous decisions, necessitating rebriefing and reargument of issues already decided by the Court. In effect, granting the motions to intervene could unravel all the process and progress of the last five-plus years.

Both the Association and the Tribe protest that they will only address "new" issues in the case. However, there are no discernable "new" issues. The regulatory changes are in response to this Court and other courts' orders interpreting existing statutes. In any event, this Court cannot bind the parties or constrain them in any meaningful way from litigating in their own interests, once admitted as parties to the lawsuit.

As a general rule, intervenors are permitted to litigate fully once admitted to a suit. *League of United Latin American Citizens*, 131 F.3d 1297 at 1304, *citing* Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, 7C *Federal Practice and Procedure Civil* §1920, at 488-91 (1986)(denying motion to intervene twenty-seven months into lawsuit).

Admitting the Association and the Tribe would inevitably prolong the litigation to some degree. Additional delay is not alone decisive (otherwise every intervention motion would be denied out of hand because it carries with it, almost by definition, the prospect of prolonging the litigation.) For this reason, this Court does not speculate on the peripheral issue of the likelihood of one or both proposed intervenors' consent to this Court's jurisdiction or the possibility of delay due to reassignment to another judge.

The significant question, as discussed in the *League of United Latin American Citizens* case, is the *delay in seeking to intervene*. In the case at bar, the proposed intervenors waited before seeking to interject themselves into the case, over five years

1   after the suit was filed in 2001 and almost two years after the issue of the economic impact

2   of a fishery rebuilding plan was brought to the forefront of their attention by the Ninth

3   Circuit ruling in Judge Breyer's case in 2005 [4]. In effect they waited until the case was, to

4   all intents and purposes, winding down before demanding full-party participation. The

5   length of delay combined with the substantive proceedings which have gone before, as

6   well as the present posture of the case, counsel against granting the motions to intervene.

7   *League of United Latin American Citizens, Id.* This Court finds that the additional delay

8   caused by the proposed intervenors' presence is indeed relevant to the timeliness calculus

9   and militates against granting the motions by the Association and the Tribe.

### Length and Reason for Delay

11      Any substantial length of time weighs heavily against intervention. *League of United*

12  *Latin American Citizens Against Wilson*, 131 F.3d at 1302. However, the mere lapse of time

13  by itself is not controlling. The focus is on the date the entity attempting to intervene should

14  have been aware its interests would no longer be protected adequately by the parties,

15  rather than the date it learned of the litigation. *Officers for Justice v. Civil Service*

16  *Commission of City & County of San Francisco*, 934 F.2d 1092, 1095 (9th Cir. 1991)

17  (intervention allowed ten years after consent decree because existing party changed its

18  position on interpretation of important provision.)

19

20      Knowledge that the action was pending is not always, by itself, relevant in

21  determining timeliness. *National Association for the Advancement of Colored People v.*

22  *New York*, 413 U.S. 345, 366-367 (1973). Rather, the relevant circumstance is when the

23  would-be intervenor first became aware that its interest could be adversely affected and

24  was not being protected adequately by the existing parties. *United Airlines, Inc. v.*

25  *McDonald*, 432 U.S. 385, 394 (1977); *League of United Latin American Citizens, Id.* at

26  1304.

27

28      [4] In their amicus briefs in opposition to NRDC's motion for order on remedy, the
Association and the Seafood Marketing Association asked the court to consider the human
costs of drastic reductions in fishing quotas and not just dry statistics or legal theory. (Order
at Docket # 53, pages 7:8-9, filed January 17, 2003.)

United States District Court

For the Northern District of California

The Court looks to when the proposed Intervenor knew or should have known of the circumstance which would give rise to the need to intervene. *United States v. Alisal Water Corp.*, 370 F.3d 915, 923 (9th Cir. 2004).

One good reason for delay is changed circumstances, for example, where the litigation has entered a new stage, where the would-be intervenor's rights would be jeopardized. *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984) (intervention allowed where court ordered existing parties to enter into expanded negotiations which affected intervenor for the first time).

The Association gives no reason for its delay, contending its motion is timely because it was filed prior to NRDC's motion for leave to amend. The Tribe asserts that it has not delayed, that it moved promptly, as soon as NRDC filed its Fourth Amended Complaint. However, as pointed out above, the Amended Complaint does not alter the stance of either party, nor does it add an issue that did not already exist in the case. NRDC merely added Amendment 16-4 to Amendments 12, 16-1, 16-2 and 16-3 on the list of NMFS regulations and proposed regulations to which it objects. Each Amendment is merely a renumbering of a previous amendment to reflect changes in response to court orders and as part of the regulatory process.

In the case at bar, the existing parties have held essentially the same legal positions for the entire duration of the lawsuit - -  the NMFS defending its interpretation of the Magnuson-Stevens Act to require fewer restrictions on fishing, as to quotas, equipment and geographical limitations, and the NRDC seeking enhanced protection for the fisheries under pressure.

The proposed intervenors have long been aware that the economic interests of fishing communities were at issue in this case, as in the other groundfish cases. Most recently, on August 24, 2005, the Ninth Circuit decided *Natural Resources Defense Council v. National Marine Fisheries Service* (*NRDC v. NMFS*), 421 F.3d 872 (9th Cir. 2005). That case was an appeal of the district court decision by Judge Breyer in *NRDC v. NMFS*, 280 F. Supp. 2d. 1007 (N.D. Cal. 2003). The Ninth Circuit reversed in part and remanded, and held

United States District Court

For the Northern District of California

that the 2002 fishing quota for darkblotched rockfish, an overfished species, violated the

requirement of the Magnuson-Stevens Fishery Conservation and Management Act

("Magnuson-Stevens Act") that the rebuilding time period must be as short as possible,

taking into account the status and biology of any overfished stocks of fish, *the needs of*

*fishing communities*, recommendations by international organizations in which the United

States participates, and the interaction of the overfished stock of fish within the marine

ecosystem.16 U.S.C. § 1854(e)(4)(A)(i). *NRDC v. NMFS*, 421 F.3d 872 at 879-881

(Emphasis added)

NRDC, in line with the Ninth Circuit opinion in Judge Breyer's case,  noted in its

Fourth Amended Complaint that the Ninth Circuit requires NMFS to rebuild overfished

species as quickly as possible unless there are disastrous short-term economic

consequences for fishing communities.

In the Amended Complaint, NRDC added specific language that "In approving

Amendment 16-4, NMFS approved revised rebuilding periods that are unlawfully biased to

achieve economic benefits for fishing communities and are not as short as possible, in

violation of the Magnuson-Stevens Act." NRDC objects that the economic analysis by

NMFS is arbitrary, capricious, and not in accordance with law, failing to properly identify,

calculate and quantify the economic costs and benefits of the rebuilding periods. NRDC

also contends that NMFS used outdated data to conduct its economic analysis of the

revised rebuilding periods in Amendment 16-4, despite the availability of more recent data

and significant changes in the economics of the fishing industry since the outdated data

were collected, and arbitrarily ignoring many requirements of NOAA's guidelines for

economic analysis of fisheries.

The Court finds it likely that this specific language in Plaintiffs' Fourth Amended

Complaint may have alarmed the proposed intervenors sufficiently to motivate them to seek

to intervene. However, the importance of the impact of a Pacific groundfish fishery

management plan on the economics of fishing communities existed in this lawsuit long

before this specific language was employed by NRDC, and was explicitly articulated by the

Ninth Circuit in its remand of the case before Judge Breyer in 2005. It would be disingenuous for the proposed intervenors, particularly the Association, which is an intervenor in the case before Judge Breyer, to claim that this issue was suddenly news to them when it was articulated in Plaintiffs' Fourth Amended Complaint.

The economic impact of rebuilding plans on fishing communities has been at issue since this lawsuit was filed, as one of the factors to be considered in developing a rebuilding plan for an overfished species. It was re-emphasized by the Ninth Circuit ruling in 2005. That was the latest point at which the Association and the Tribe might contend that they learned for the first time that their interests might not be adequately represented by the original parties in the case at bar.

This case is in its final stages, after multiple full and partial summary judgments in the three related cases, final judgments in two of the three related cases before this Court, and several rulings by the Court of Appeals, including a persuasive ruling in another case. The existing parties have narrowed the issues, but the issues are not new. The proposed intervenors fail to show how the existing parties' positions have changed, such that the proposed intervenors didn't need to become involved before, as parties rather than *amici*, but need to do so now.

Perhaps the best explanation for the decision of the Association and the Tribe to file their motions to intervene is a strategic one, that this is the most cost-effective time to intervene. However, that is not a valid reason for delay. *United States v. Alisal Water Corp., supra*, 370 F.3d at 923-924.

### Conclusion

The Court finds that this case is in a very late stage, that the Court has engaged in multiple substantial dispositive proceedings in the three related cases, including full and partial summary judgments, appeals and interim settlements of attorney fees.

The Court finds that the proposed intervention would result in prejudice to NRDC, due to the effect on its existing relationship with NMFS, based on the previous litigation and settlement of interlocutory issues such as attorney fees. Intervention would also prejudice

United States District Court
For the Northern District of California

1   NRDC because it has previously allocated its resources and staffing to deal with one

2   opponent rather than three, and the case is in the procedural posture of winding down, with

3   resolution by either summary judgment or settlement ion the horizon. The proposed

4   intervenors would be entitled as parties to move for reconsideration of previous rulings, with

5   the potential of undoing previous adjudications by this Court.

6          The Court finds that the parties' legal positions have been essentially unchanged

7   throughout the course of the litigation and that therefore the proposed intervenors should

8   have known from virtually the outset whether their interests were adequately represented by

9   the existing parties or not. In any event, the proposed intervenors have been on notice most

10  recently since the Ninth Circuit's 2005 decision in the groundfish case before Judge Breyer

11  that the economic concerns of fishing communities was a significant issue in any case

12  involving the Pacific groundfish fishery, and in fact the Association expressed this concern

13  in its amicus brief in 2002. NRDC's Fourth Amended Complaint was not news to either

14  proposed intervenor. The Court finds that the Association gives no reason for its delay,

15  contending that it needed only to file its motion to intervene prior to NRDC's filing its motion

16  for leave to amend and that the Tribe asserts that its motion is not delayed at all, because it

17  filed after NRDC filed its Fourth Amended Complaint. However, the Court finds that the

18  Amended Complaint adds no issues that were not already in the case.

19         The Court further finds that the proposed intervenors have acted for economic and

20  strategic reasons, choosing to come into the case late in order to conserve their resources

21  by waiting until they would have the most leverage. Accordingly, the motions are not timely

22  and must be denied. Having found the motions untimely, the Court need not reach

23  additional issues.  However, the Association and the Tribe may both participate in these

24  proceedings as *amici curiae* upon appropriate application by the Tribe to do so.

25         For all the above reasons, the Court denies the motions to intervene.

26         IT IS SO ORDERED.

27  DATED: May 22, 2007

28

_James Larson_

_____

James Larson

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1                                                                   Chief Magistrate Judge

2

3

4

5

6

7

8

     G:\JLALL\CHAMBERS\CASES\CIVIL\01-0421\ord-145, 162.wpd

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28